UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JIM LEMON, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 05-949 (RCL) |
| ) | |
| THE HONORABLE FRANCIS J. HARVEY, ) | |
| SECRETARY OF THE ARMY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Before the Court are plaintiffs' Motion [36] for Leave to File Second Amended Complaint and defendants' Motions [26, 27, 28] to Dismiss for Lack of Jurisdiction, or in the alternative, Motions for Summary Judgment. The Court will grant plaintiffs' Motion [36], as the Court finds plaintiffs' amendments have no effect on the Court's ruling on defendants' Motions [26, 27, 28] – which the Court will also grant. The Court finds the plaintiffs lack standing to bring this action and so will dismiss their claims for lack of subject matter jurisdiction. As defendants' motions are dispositive, the Court will deny as moot defendants' other pending matter, Motion [40] to Strike. A separate order will follow this Memorandum Opinion.

**BACKGROUND**

Communities slated to lose their military facilities – and the employment opportunities found therein – often result to legal and political fisticuffs to halt base closures.[1] While jobs

---

[1] *See, e.g.,* Robert A. Hamilton, *Doing Battle, Once Again, Against Base Closings*, N.Y. TIMES, Apr. 30, 1995, at 13CN1.

attendant to the military are lost, *see, e.g., Dalton v. Specter*, 511 U.S. 462 (1994), the land the base occupied, freed from the federal government's grasp, becomes available for development by state and local governments.  The shuttering of Fort Ritchie, the base in question here, has generated its fair share of discord – among those seeking to influence the base's redevelopment. *See, e.g., Role Models America, Inc. v. PenMar Dev. Corp.*, 394 F. Supp. 2d 121 (D.D.C. 2005) (Bates, J.); *Role Models America, Inc. v. White*, 193 F. Supp. 2d 76 (D.D.C. 2002) (Urbina, J.), *rev'd*, 317 F.3d 327 (D.C. Cir. 2003).

Plaintiffs Jim Lemon and Robin Biser reside near Fort Ritchie in the Catoctin Mountains of western Maryland.  They bring this suit to, *inter alia*, prevent the transfer of property at Fort Ritchie between the defendants:  the Secretary of the Army, PenMar Development Corporation ("PenMar"), and Corporate Offices Properties Trust ("COPT").  In doing so, plaintiffs hope to avert environmental damage and loss of valuable historic buildings that plaintiffs contend will occur if the planned development of the base land proceeds.

Fort Ritchie was selected to be shuttered in 1995.  (Second Am. Compl. ¶ 8.)  In 1997, Maryland created defendant PenMar to serve as the local redevelopment authority ("LRA") for the Fort.  (*Id*. ¶ 14.)  PenMar subsequently entered into an agreement with the Army, the Maryland State Historic Preservation Officer, and the Advisory Council on Historic Preservation to ensure the protection of a historic area of the Fort, known as the Camp Ritchie Historic District.  (*See* Admin. R. 775-785.)  As PenMar moved ahead with the redevelopment plans, the Army prepared an environmental impact statement analyzing various intensities of land use on the base property and the environmental effects to be expected from each.  (*See* Admin. R. 336-685.)  PenMar requested an economic development conveyance of the land from the Department

of Defense, predicated on a redevelopment plan it submitted in 1997. (*See* Admin. R. 878-911) PenMar also entered into a memorandum of agreement with the Army, ostensibly obliging PenMar to uphold, among other things, the aforementioned historic preservation agreement. (*See* Admin. R. 919-997.) In 2004, PenMar entered into an agreement to sell the Fort Ritchie land to defendant COPT (with clauses designed to uphold prior historic preservation efforts), which then proposed its own development plan. (*See* Admin. R. 1005-1028; 1067-1114.) It is the promulgation of this plan, along with the events leading thereto, to which plaintiffs object.

In their second amended complaint, plaintiffs allege that defendants violated the Defense Base Closure and Realignment Act of 1990 ("BRAC"), Pub. L. No. 101-510, 104 Stat. 1485; the National Environmental Policy Act ("NEPA"), 42 U.S.C.A. §§ 4321-4370 (West 2003 & Supp. 2006); and the National Historic Preservation Act ("NHPA"), 16 U.S.C.A. § 470 (West 2000 & Supp. 2006). Per BRAC, plaintiffs contend that defendants have "conspired to implement an illegitimate and unlawful redevelopment plan," breaching agreements plaintiffs claim are binding on the developers and the Army (Count I). (Second Am. Compl. ¶ 25.) As a result of the deviation from those plans, plaintiffs allege that defendants will increase the environmental impact of the development beyond that contemplated in earlier impact studies, thus violating the NEPA (Count II). Lastly, plaintiffs aver that construction plans for the base interfere with, among other things, parade fields that are located within the Camp Ritchie Historic District – allegedly in violation of the NHPA (Count III).

All three defendants have filed motions to dismiss, or in the alternative, for summary judgment. Defendants contend that plaintiffs lack standing to sue under any of the three counts listed above. Defendants further contend that this Court lacks the subject matter jurisdiction to

adjudicate Count I because plaintiffs have no right of action under BRAC. Defendants also note that Count II is barred by a statute of limitations. Lastly, defendants contend that because they complied with the laws under which plaintiffs bring suit, defendants are due judgment as a matter of law. The Court finds that plaintiffs lack standing to bring this lawsuit, and consequently need not expound on the legal standard for granting summary judgment. The question of standing goes to a Court's subject matter jurisdiction. The Court therefore turns to the standard for dismissal for lack of subject matter jurisdiction.

## DISCUSSION

### I. Legal Standard

#### A. Dismissal for Lack of Subject Matter Jurisdiction

##### 1. Generally

The *sine qua non* of judicial proceedings in federal court is a court's subject matter jurisdiction over the dispute. The primacy of this requirement is demonstrated by the strength of the mandate to dismiss a case that the court lacks subject matter jurisdiction to hear. A motion to dismiss for lack of subject matter jurisdiction (FED. R. CIV. P. 12(b)(1)) can be entertained at any point in the proceedings – or even at their conclusion – and courts are charged with dismissing a case *sua sponte* if it becomes apparent that they lack the subject matter jurisdiction to hear it. *See* FED. R. CIV. P. 12(b)(1), 12(h)(3); *Arbaugh v. Y & H Corp.*, 126 S.Ct. 1235, 1240 (Feb. 22, 2006).

As is typical in ruling on a dispositive motion, in ruling on a 12(b)(1) motion, a court will give the plaintiff the benefit of all favorable inferences that can be drawn from the proffered facts. *See Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Allegations are construed,

when possible, to favor the plaintiff. *Id*. Further, unlike other 12(b) motions to dismiss, in a motion to dismiss under 12(b)(1), a court may consider facts outside the pleadings in ruling on the existence of subject matter jurisdiction. *Herbert v. Nat'l Acad. Of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). Nonetheless, the burden is, in the first place, on the plaintiff to demonstrate that a court has the necessary jurisdiction to hear his claim. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### 2. Requirement of Standing

Article III of the Constitution confers subject matter jurisdiction on the federal courts in "cases" arising under the Constitution or federal laws and in "controversies" between various parties, delimited by the Article. *See also* 28 U.S.C.A. § 1331 (West 1993); 28 U.S.C.A. § 1332 (West 1993 & Supp. 2006). One of the prerequisites a plaintiff must therefore meet to come within the federal courts' subject matter jurisdiction is that he present the court with a "case" or a "controversy."

In order to meet the Article III case-or-controversy requirement, the plaintiff must have standing to bring the matter in dispute before the court. *See Allen v. Wright*, 468 U.S. 737, 749-51 (1984). There are three threshold criteria the plaintiff must fulfill to have standing under Article III. First, the plaintiff must have suffered a "concrete and particularized" injury-in-fact to some legally protected interest. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). If the injury has not yet occurred, the injurious conduct must be "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id*. (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Second, there must be a causal connection between the injury and the conduct of which the plaintiff complains. *Id*., 504 U.S. at 560. Finally, a favorable decision must be likely to remedy the wrong inflicted

on the plaintiff. *Id.*, 504 U.S. at 561. Courts need not waste resources with judicially intractable problems.

Article III standing, however, is merely the baseline from which a court proceeds in determining whether a plaintiff's standing is sufficient to render his claim justiciable. Courts may enquire into the prudence of hearing a plaintiff's claim in other ways, employing "several judicially self-imposed limits on the exercise of federal jurisdiction." *Allen*, 468 U.S. at 751. For instance, a plaintiff bringing suit under a particular statute may be required to show that the interest he seeks to vindicate is within the zone of interests that statute was designed to protect. *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153-54 (1970). Additionally, courts will abstain from entertaining actions grounded in the rights of non-parties or those raising questions best resolved in the legislative forum. *See Allen*, 468 U.S. at 751.

A final note on the subject of questions best resolved in another arena. As the litigation surrounding this base disposal demonstrates, one entity or another will pretty regularly be dissatisfied with an agency's policy choices. For readily apparent reasons – geographic, to say nothing of jurisdictional – plaintiffs are often before this Court seeking to reapportion agency-divided infants. Courts, however, are discouraged from harboring Solomonic pretensions in such matters. The policy choices of federal agencies ought not be subjected to even the most well-intentioned tinkering, absent some true legal failure by the agency in question.

To avert the danger of such tinkering, agency-defendants in this Court will often challenge the Court's jurisdiction to entertain the plaintiffs' entreaties. Questioning a plaintiff's standing is one way of doing so. Anticipating these challenges, and in the interest of judicial economy, this Court expects plaintiffs to have the ability to make a clear showing of standing

throughout the proceedings. *See Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1286 (D.C. Cir 2005) ("we put on notice all complainants whose standing is unclear that they must prove their standing by a 'substantial probability.'") (quoting *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002)). Plaintiffs Lemon and Biser have not met this hurdle, for the reasons discussed below.

## II. Plaintiffs' Standing to Initiate this Action

### A. BRAC Claim

Plaintiffs contend that defendants have violated BRAC in myriad ways. Among them, defendants have: violated a Memorandum of Agreement dictating that the base be developed according to a plan other than COPT's; inappropriately created an economic development conveyance ("EDC") of the base property founded on the wrong redevelopment plan; and dismissed the community's planning efforts. The Court will not reach the merits of these claims. Despite twice amending their complaint in an attempt to come within the Court's subject matter jurisdiction, plaintiffs still have not demonstrated that they have standing to bring this action under BRAC. Accordingly, Count I will be dismissed.

The plaintiffs are not suitable champions for any of the interests they seek to vindicate under BRAC. The agreements that the plaintiffs claim have been breached are agreements between the Army, PenMar, and COPT, with Washington County, Maryland an occasional third party beneficiary. For instance, plaintiffs mention that PenMar's EDC application promised a transfer of Fort Ritchie's water system to Washington County after the completion of improvements (Admin. R. 903); however, PenMar's agreement with COPT promises to transfer the water system to COPT (Admin. R. 1005-1028). If the issue here were merely the agreements

between the parties, plaintiffs would be incidental beneficiaries without rights under the agreement. This is clear from the nature of plaintiffs' connection with the parties: they are residents of Washington County,[2] and as such *might* reap some *small* benefit from the County's ownership of the base's water system. Defendants surely did not intend Mr. Lemon and Ms. Biser to benefit from their contract. Moreover, benefits conferred on third parties by government contracts are presumed to be incidental, as the government "usually acts in the general public interest." *S.E.C. v. Prudential Sec., Inc.*, 136 F.3d 153, 158 (D.C. Cir. 1998) (citing *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 288 (D.C. Cir. 1993)). On a contract theory, plaintiffs cannot demonstrate standing insomuch as they are suing to enforce a right that is not their own.

Plaintiffs allege, however, that these breaches of contract are also violations of regulations promulgated under BRAC.,[3] 32 C.F.R. § 175.7(e) (1998).[4] Defendants proffer that plaintiffs have no right of action under BRAC, *Haw. Motor Sports Ctr. v. Babbitt*, 125 F. Supp. 2d 1041, 1046-47 (D. Hawaii 2000), and consequently, the Court need not reach the question of the plaintiffs' standing to bring an action addressing BRAC regulations. (Harvey Reply n. 2.). The Court, however, believes it prudent to resolve the question of standing without reaching the

---

[2] The Court describes both plaintiffs as Washington County residents for rhetorical expediency. Mr. Lemon no longer primarily resides in Washington County, making his claim somewhat more tenuous than the Court assumes here.

[3] The regulation in question cites as authority revisions to BRAC made in § 2903 of Title XXIX, Pub. L. No. 103-160.

[4] PenMar filed the application for an EDC in June of 1999; the regulation in effect at that time is contained in the 1998 publication of the Code of Federal Regulations. The relevant text remains the same through the 2005 version of the Code.

availability of a private right of action.[5]

Section 175.7(e) of Title 32 of the Code of Federal Regulations informs the reader that an application for an EDC "should . . . contain the following elements . . . a copy of the adopted redevelopment plan." (e)(5)(i). At the time PenMar filed for the EDC, it submitted its most current plan, a fact plaintiffs do not seem to contest. (*See* Second Am. Compl. ¶¶ 33-34.) Plaintiffs' request for relief is directed at exactly that point, asking the Court to "require the implementing LRA . . . to apply for and obtain an economic development conveyance . . . based on its development plan." In simpler terms, plaintiffs would like the redevelopment authority to submit its most current plans for evaluation. (*Id.* ¶ 35.) The Court will ignore the apparent lack of a regulatory requirement that the Army reconsider its EDC grant in light of subsequent changes to the redevelopment plan. Instead, the Court asks how plaintiffs are harmed by the failure to reevaluate the EDC based on the COPT plan, or better still, how forcing the Army to reevaluate the EDC will do anything to redress the plaintiffs' injuries. As defendants note, there is no requirement that a request for an EDC be evaluated in light "of the local community's planning," and the alleged dismissal of that planning is the injury plaintiffs allege. (*See* Second Am. Compl. ¶ 35; *but see* Harvey Mem. P. & A. 28; 32 C.F.R. § 175.7(e).) As plaintiffs have no

---

[5] The Court believes lack of a private right of action would be better addressed here in a motion to dismiss for failure to state a remediable claim. *See Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 199 (D.C. Cir. 2004). Language from this Circuit suggests that the standing issue should be resolved before an inquiry into the availability of a private right of action. *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 418 F.3d 1238, 1240 (D.C. Cir. 2005) (per curiam). This is logical if the bona fide jurisdictional question – standing – is to be resolved before what could be construed as a question on the merits - the availability of a right of action. Further, post-*Arbaugh*, courts should be on notice not to engage in "drive-by jurisdictional rulings," conflating questions on the merits with jurisdictional questions. *Arbaugh*, 126 S. Ct. at 1242 (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 91 (1998)). As this case presents a genuine jurisdictional question of standing, the Court will happily avoid the "drive-by jurisdictional" pitfall and bypass what might better be typed an attack on the merits.

cognizable legal interest in the EDC process to begin with, even if the defendants deviate from that process, plaintiffs suffer no injury to a legally protected right. Furthermore, were the Court to enjoin the defendants to evaluate the most current development plan, there is no guarantee that the outcome – the granting of an EDC – will be any different. Assuming, *arguendo*, that plaintiffs *had* been wronged in the issuance of the EDC, requiring the defendants to repeat the process is therefore unlikely to redress plaintiffs' hypothetical injury. Either the deficiency in injury or the deficiency in remedy are fatal to plaintiffs' assertion of standing to bring this claim. *See Lujan*, 504 U.S. at 560-61. The Court will consequently dismiss plaintiffs' BRAC claim for lack of subject matter jurisdiction.[6]

**B. NEPA Claim**

The Court now focuses its attention on plaintiffs' requests for relief numbered 4 and 5, ostensibly bottomed in plaintiffs' action under NEPA. (Second Am. Compl. 20-21.) Plaintiffs ask the Court to force the Army to prepare a Supplemental Environmental Impact Statement ("SEIS"), but the Court fails to see how doing so affects the injuries of which the plaintiffs complain. The plaintiffs allege that the environmental degradation that will result from the redevelopment of Fort Ritchie will result in injury to their interests. The relevant question is whether ordering the Army to undertake a new environmental assessment redresses the injuries for which the plaintiffs seek relief. The Court must answer this in the negative.

The Army is not required to perform any activity as a result of the information gleaned in

---

[6] The Court observes in passing that plaintiffs also have no standing to bring BRAC claims based on the needs of the homeless (Second Am. Compl. ¶¶ 29-31). Regardless, the Court believes that plaintiffs have effectively conceded those claims in their opposition to defendants' motions to dismiss. The reiteration of those claims in plaintiffs' newest complaint does not restore to the claims the support they lack.

the preparation of an impact statement. *See Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 351 (1989); *Citizens Against Burlington, Inc. v. Busey*, 938 F.2d 190, 194 (D.C. Cir. 1991). The Court hastens to add, however, that the preparation of an Environmental Impact Statement ("EIS") is not an exercise in futility, meant to placate environmentalists while allowing the government a free hand to despoil the country's natural bounties. The NEPA-mandated EIS offers the public an opportunity to respond to an agency's activities through the political process, affecting new laws to regulate the activity in question. *Cf. Robertson*, 490 U.S. at 349-50, 351 n. 14. Consequently, were a SEIS to confirm the plaintiffs' worst fears about the development at Fort Ritchie, the plaintiffs could receive no redress, from this Court, for their injuries – other than the succor that can be taken from having accurately foreseen them. *Cf. The Wilderness Soc. v. Norton*, 434 F.3d 584, 592 (D.C. Cir. Jan. 17, 2006) (wherein off-road drivers' pervasive disregard of wilderness status of an area would not be remedied by enjoining the National Park Service to map 5% of that area in which off-road vehicles are permitted.) Requiring preparation of a SEIS does nothing to force defendants to alter their allegedly injurious course of action here.

In reaching the above conclusions, the Court does not opine on the gravity of the environmental degradation plaintiffs anticipate – to do so would be beyond the Court's expertise and in excess of its charge in evaluating the motion before it. The Court merely points out the inadequacy of the requested remedy. Plaintiffs' rejoinder is that preparation of a SEIS aimed specifically at the COPT plan would "redress [p]laintiffs' injuries by ensuring that the proposed intensity of the COPT . . . Plan . . . [is] known to the public before it is too late to attempt to modify the plan." The plaintiffs' injuries – allowing for the sake of argument that such injuries

are imminent – will not be redressed by the preparation of the SEIS; the remedy would be in the actual modification of the plan.  As the Court does not believe that granting the remedy requested by the plaintiffs serves to redress the injuries plaintiffs allege, the Court dismisses plaintiffs' NEPA claims for plaintiffs' lack of standing to bring them.

Tangentially, the Court notes that plaintiffs' sixth request for relief asks the Court to order the developer of Fort Ritchie to comply with plans that could only be binding under a contract the plaintiffs have no right to enforce.  (*See* Admin. R. 918-997, 1004-1028.)  Defendants are not bound to develop at a certain intensity by any material currently before this Court save their own agreements.  Even if the plaintiffs prevailed on claims demanding another "hard look" at the environmental impact of defendants' activities, this Court would not order defendants to do something merely because it is the plaintiffs' opinion that it would be a favorable course of action.

**C.  NHPA Claim**

Lastly, plaintiffs allege that COPT's development plan would intrude upon historic areas, such as the Camp Ritchie Historic District's parade fields, in violation of the Purchase and Sale Agreement (Admin. R. 1010) between PenMar and COPT, the Memorandum of Agreement (*id*. 929) between PenMar and the Army, and the Programmatic Agreement (*id*. 777-78) among the Army, the Maryland State Historic Preservation Officer, and the Advisory Council on Historic Preservation.  Notably absent from the list of parties to these agreements are the plaintiffs.

A clause found in the Programmatic Agreement, however, requires greater examination before ruling that plaintiffs lack rights under these agreements.  Clause XIII provides for "Public Objections":

> At any time during implementation of the measures stipulated in this agreement by the Army or LRA, if a timely and substantive objection to any such measure or its manner of implementation is raised by interested persons, then the Army or LRA shall consider the objection and consult, as appropriate, with the objecting party, the SHPO, and the Council to attempt to resolve the objection.

(*Id*. 784.)  Plaintiffs contend that this clause makes them third party beneficiaries of the Programmatic Agreement.  (Second Am. Compl. ¶ 48.)  The Court does not believe this clause gives the plaintiffs the right to bring suit under the contract.  Granting the public a mechanism to object to the parties' activities does not indicate an intent to any member of the public to sue to enforce the other terms of the agreement on the parties.  *See Prudential Sec.*, 136 F.3d at 159 (noting that "a third party to a consent decree is not an 'intended beneficiary' unless the parties 'intended that a third party should receive a benefit *which might be enforced in the courts*.'") (quoting *Corrugated Paper Prods. v. Longview Fibre Co.*, 868 F.2d 908, 911 (7th Cir. 1989)).  The Court does not believe that the parties wished to override the *Prudential Sec.* presumption against third party beneficiaries by creating an unlimited class of "interested persons" with the right to bring suit.

The Court is sensitive to plaintiffs' anxiety about the possible destruction of historic sites.  It would be particularly egregious for defendant PenMar to sanction destructive activity after its part in rancorous litigation partially on the unauthorized erection of two flagpoles on the Fort Ritchie property.  *See Role Models America, Inc. v. PenMar Dev. Corp.*, 94 F. Supp 2d at 125.  The Court notes that the parties to the various agreements that plaintiffs cite, above, *do* have obligations among themselves to ensure that precisely the activity that plaintiffs fear does not occur.  (*See, e.g.*, Admin. R. 1010.)  In their reply to the plaintiffs' opposition to the motion the Court is now considering, the Army devoted some space to describing the process by which the

13

parties would ensure the preservation of Fort Ritchie's historic areas.  The Court sincerely hopes that the defendants adhere to that process, in the capacity required of each by the redevelopment agreements.  The Court's dismissal of this matter should not be read as sanctioning the violation of agreements merely because the plaintiffs at bar are not the appropriate parties to enforce those agreements.

## **CONCLUSION**

For the foregoing reasons, the Court hereby dismisses this suit, for plaintiffs' lack of standing to bring it.  As this dismissal disposes of the case at bar, the Court will deny as moot defendants' pending Motion [40] to Strike.

A separate Order will issue this date.


Signed by Royce C. Lamberth, United States District Judge, on August 25, 2006.